**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

**WILLIAM S. MIX,**

        **Plaintiff,**

v.                                                5:00-CV-1020
                                                       (NAM/GJD)

**DELAWARE AND HUDSON RAILWAY**
**COMPANY, INC. d/b/a CP RAIL SYSTEM,**

        **Defendant.**

---

**APPEARANCES:**                                     **OF COUNSEL:**

DAVIS & MYERS                             Gerard J. Martillotti, Esq.
1601 Market Street, Suite 2330
Philadelphia, Pennsylvania 19103
*Attorneys for Plaintiff*

McNAMEE, LOCHNER, TITUS &         Scott A. Barbour, Esq.
WILLIAMS, P.C.
75 State Street - P.O.B. 459
Albany, New York 12201-0459
*Attorneys for Defendant*

**NORMAN A. MORDUE, D.J.:**

**MEMORANDUM-DECISION AND ORDER**

**I.     INTRODUCTION**

      Plaintiff brings this action pursuant to the Federal Employers' Liability Act ("FELA"), codified at 45 U.S.C. § 51 *et seq.,* seeking to recover damages for tinnitus and hearing loss he sustained as a result of exposure to loud noise during his employment with Defendant Delaware and Hudson Railway Co., Inc. d/b/a C P Rail System ("D & H Railway" or "defendant"). Presently before the Court is defendant's motion for summary judgment.

Defendant previously moved for summary judgment on the ground that this action, which was filed on June 28, 2000, is barred by FELA's three year statute of limitations. By Memorandum-Decision and Order dated September 12, 2002, this Court granted defendant's motion finding that under FELA's "discovery rule",[1] plaintiff knew or should have known of his hearing injuries and their cause prior to June 28, 1997, the earliest date upon which his cause of action could have accrued. *See* Dkt. no.21.

Plaintiff appealed the decision and on September 23, 2003, the Second Circuit affirmed in part and vacated and remanded in part for further consideration and additional fact finding, if

---

[1] The Second Circuit explained the "discovery rule" as follows:

> The Federal Employers' Liability Act provides that "[n]o action shall be maintained ... unless commenced within three years from the day the cause of action accrued." 45 U.S.C. § 56. With respect to "gradual injuries"--those which occur gradually, over long periods of time, due to ongoing exposure to harmful working conditions--the Supreme Court has adopted a "discovery rule" and held that the FELA statute of limitations accrues when the injury "manifest [s]" itself, taking into account whether the plaintiff "should have known" of his injury. *Urie v. Thompson*, 337 U.S. 163, 170 (1949). The Court subsequently applied this discovery rule to claims under the Federal Tort Claims Act, 28 U.S.C. §§ 2671-2680 ("FTCA"), holding that a tort claim does not accrue until the plaintiff discovers both his injury and its cause, but that accrual does not await awareness by the plaintiff that his injury was negligently inflicted. *See United States v. Kubrick*, 444 U.S. 111, 120-25, (1979). Although this discovery rule was refined in the context of FTCA cases, the genesis of the rule can be traced to *Urie* and courts apply it to FELA cases. See, e.g., *Campbell v. Grand Trunk W. R.R. Co.*, 238 F.3d 772, 775 (6th Cir. 2001); *Fries v. Chicago & Northwestern Transp. Co.*, 909 F.2d 1092, 1095-96 (7th Cir. 1990); *Albert v. Maine Cent. R.R. Co.*, 905 F.2d 541, 543-44 (1st Cir. 1990); *Townley v. Norfolk & W. R.R. Co.*, 887 F.2d 498, 500- 01 (4th Cir. 1989); *DuBose v. Kansas City S. Ry. Co.*, 729 F.2d 1026, 1029-30 (5th Cir. 1984). Thus, an [sic] FELA action accrues when "the plaintiff in the exercise of reasonable diligence knows both the existence and the cause of his injury." *Ulrich v. Veterans Admin. Hosp.*, 853 F.2d 1078, 1080 (2d Cir. 1988) (citing *Kubrick*, 444 U.S. at 122-25).

*Mix*, 345 F.3d at 86.

necessary. *Mix v. Delaware and Hudson Ry. Co., Inc.*, 345 F.3d 82, 91 (2d Cir. 2003). The Court permitted the parties to submit further evidence and supplemental briefs regarding the part of this Court's prior decision which the Second Circuit vacated and remanded.

## II.   BACKGROUND

Familiarity with the facts of this case is assumed based on the Court's Memorandum-Decision and Order entered on September 12, 2002, and the Second Circuit's Decision in this matter. *See id*. In short, plaintiff worked for D & H Railway from September 1973 until April 2000 at several locations and in various positions, but most recently as a freight engineer. Defendant dismissed plaintiff from his position in April 2000 after he failed a hearing exam. On June 28, 2000, plaintiff commenced the instant action pursuant to FELA, alleging that defendant failed to provide him with a reasonably safe working environment and failed to make ear plugs available at all times. Plaintiff claims that as a result, he was exposed to noisy working conditions and sustained hearing loss.

## III.   PROCEDURAL HISTORY

Defendant moved for summary judgment on the ground that this action is barred by FELA's three year statute of limitations because plaintiff knew or should have known, prior to June 28, 1997, of his hearing loss and its cause. There is evidence in the record that as early as 1993, plaintiff complained of "reduced hearing" to otolaryngologist, Dr. Leonard Newton. Further, plaintiff indicated in his deposition that at the time he consulted Dr. Newton, he believed that the problems he was having, including the ringing in his ears, were related to his work. Based on this and other uncontroverted evidence, the Court granted defendant's motion for summary judgment and dismissed this action as barred by the statute of limitations.

Plaintiff appealed the Court's decision. The Second Circuit affirmed the portion of this Court's prior decision which held that plaintiff was barred by the statute of limitations from recovering for any injuries prior to June 28, 1997. The Second Circuit found, based on the uncontroverted evidence, there was no question of material fact as to whether plaintiff knew or should have known, prior to June 28, 1997, of his hearing loss and tinnitus and that his exposure to loud noise at the railroad caused his injuries:

> Mix consulted Dr. [Leonard] Newton[, otolaryngologist] in November 1993, and he concedes that the doctor's notes indicate that he "complained of reduced hearing for some period of time." Less than one year later, Mix completed an application to renew his engineer's license. In response to the question, "Have you ever been told or noticed you are hard of hearing?," Mix checked the "Yes" box and wrote "Both." During his deposition, Mix testified that he initially noticed ringing in his ears, prompting his visit to Dr. Newton in 1993, after which his "hearing just progressively got worse."
>
> Mix argues that he consulted Dr. Newton for a distinct injury. Specifically, he argues that "[t]he problems with tinnitus and hearing loss are separate and distinct medical conditions." Even accepting the purported distinction between tinnitus and hearing loss, the record reflects that Mix complained of "hearing loss" prior to June 28, 1997. Specifically, he complained of "reduced hearing" to Dr. Newton in 1993 and admitted to being "hard of hearing" in 1994. He also testified that his hearing "progressively got worse" after his initial visit to Dr. Newton.
>
> Mix also argues that he provided contradictory testimony concerning when he had notice of his hearing loss. He cites only one portion of his deposition transcript in which he said the following:
>> Q. Do you remember telling the healthcare provider back in 1994 that you had been told that you were hard of hearing or that you've noticed being hard of hearing?
>> A. Yes, my wife tells me all the time.
>> Q. What about back in 1994, were you aware of it then?
>> A. Somewhat, not to the extent that it is right now.
>> Q. When you say, "somewhat," you had noticed that you were hard of hearing back in 1994?
>> A. This is--how can I put this? This is like my wife, she's constantly saying things to me and I misunderstand what she's saying.

However, none of this testimony contradicts evidence that Mix knew, or should have known, of his hearing loss prior to June 28, 1997. Rather, it supports the district court's conclusion on this issue. Mix admitted that his wife told him as early as 1994 that he was "hard of hearing." Mix also admitted that, as early as 1994, he was "somewhat" aware of his hearing loss.

Finally, Mix argues that "[t]he record of that office visit makes no mention whether hearing loss was objectively diagnosed or that any actual findings were documented." Regardless of whether he received an actual diagnosis, undisputed facts indicate that Mix knew that he was having problems with his hearing. The fact that Mix may not have had actual knowledge of his medical diagnosis would not relieve him of his duty of exercising due diligence based upon strong indications that he did, in fact, have an injury.

There is also no genuine issue of material fact that Mix knew, or should have known, that his hearing loss was caused by noisy conditions at his workplace. Mix testified that at the time he consulted Dr. Newton, he had "some belief" that his hearing problems were related to his work. Specifically, Mix testified as follows:
>   Q. At that time did you have some belief that the ringing in your ear[s] and any problems you were having were related to your work?
>   A. I'm going to say yes, it just kept getting worse.

Mix recognized the need to wear earplugs in noisy areas. He testified that the noise levels at the railroad yard were so high that all employees should have been required to wear earplugs in every area. Moreover, he testified that he complained to management when earplugs were not available. Thus, the record is clear that Mix recognized the connection between his noisy working conditions and his hearing loss.

In sum, based upon uncontroverted facts, there can be no dispute that Mix knew, or should have known, of both the existence and cause of his injury prior to June 28, 1997.

345 F.3d at 86-87.

On appeal, plaintiff argued that FELA permitted a cause of action for the aggravation of an existing, gradual injury that occurs during the three-year period preceding the suit. The Second Circuit rejected plaintiff's argument to the extent that "the claim for aggravation is based upon negligence of which the plaintiff was aware over three years before the suit", but held that a plaintiff may recover: (1) "for injuries suffered during the three-year period

5

preceding the suit if these injuries are sufficiently distinct from those previously suffered"; or (2) "for aggravation to existing injuries, provided that the aggravation was caused by a distinct act of negligence whose existence and relationship to the injury was unknown prior to the three-year period preceding the suit." *Id*. at 90.

With regard to the latter "distinct cause" theory, the Second Circuit noted that plaintiff "never argued that his hearing loss stemmed from two distinct causes". *Id*. at 91. Indeed, plaintiff concedes he has no evidence that his hearing loss and tinnitus were caused by a distinct act of negligence during the relevant time period. The Second Circuit found that plaintiff could nevertheless survive summary judgment with regard to his claim for injuries between June 28, 1997, and June 28, 2000, under the "distinct injuries" theory, if "he proffers evidence that, prior to June 28, 1997, his tinnitus and hearing loss caused only temporary discomfort as a result of his exposure to noisy working conditions, and that these symptoms did not manifest themselves as a cumulative, permanent injury until the three-year period preceding the suit." *Id*. at 91. The Second Circuit therefore remanded this matter so that the Court could further consider defendant's motion for summary judgment and "undertake additional fact finding, if necessary" on the issue of "distinct injuries". *Id*.

The parties have supplemented their motion papers and submitted additional evidence[2] for the Court's consideration.

## IV.   DISCUSSION

### A.   Summary Judgment Standard

---

[2] Both parties submitted additional evidence, but none of the documents are in admissible form. Neither party, however, has objected to the Court's consideration of these documents.

A party moving for summary judgment bears the initial burden of demonstrating that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the Court, viewing the evidence in the light most favorable to the nonmovant, determines that the movant has satisfied this burden, the burden then shifts to the nonmovant to adduce evidence establishing the existence of a disputed issue of material fact requiring a trial. *See id*. If the nonmovant fails to carry this burden, summary judgment is appropriate. *See id*.

**B.     Distinct Injury**

With regard to the "distinct injury" theory, the Second Circuit adopted the following rule:

> a plaintiff may maintain a claim for "accumulation" if he proffers evidence suggesting that his initial symptoms were temporary in nature, and based upon their accumulation, became permanent injuries only during the three-year period preceding his suit. In essence, we recognize that temporary injuries may be sufficiently distinct from permanent injuries to preclude summary judgment, as an employee is "injured only when the *accumulated* effects of the [continuing exposure] manifest themselves."

*Id*. at 90-91 (quoting *Urie*, 337 U.S. at 170) (emphasis added) (citations omitted). In so holding, the Second Circuit adopted the ruling the Sixth Circuit set forth in *Fonseca v. Consolidated Rail Corp.*, "if the continuous pain and numbness that developed in the mid 1990s is a distinct injury from the normal discomforts of a day's work, . . . then [the plaintiff's] cause of action may survive the statute of limitations defense." 246 F.3d 585, 590 (6th Cir. 2001). As the Second Circuit explained, in *Fonseca*:

> the plaintiff, a railroad laborer who worked with various hand tools between 1967 and 1997, would experience pain in his hands, but the pain always subsided within a day. [*Fonseca*, 246 F.3d] at 587. Sometime between 1996 and 1997, however, the

> pain became permanent, and the plaintiff filed suit under the FELA. [*Fonseca*, 246 F.3d at 587]. The Sixth Circuit distinguished between the "temporary pain" the plaintiff experienced for twenty-seven years and the "cumulative injury" that resulted in permanent, continuous pain, concluding that the "accumulated effects" of exposure to harmful working conditions may comprise an injury distinct from the temporary symptoms he previously experienced. [*Fonseca*, 246 F.3d] at 590-91.

*Mix*, 345 F.3d at 90.

In this case, as discussed, defendant has adduced evidence that plaintiff knew or should have known of his hearing loss and tinnitus and their cause (exposure to loud noise at the railroad) prior to June 28, 1997. Defendant's evidence, including the medical records and plaintiff's deposition testimony, also indicates that plaintiff's hearing loss and tinnitus[3] were permanent injuries which worsened gradually. For instance, plaintiff testified in his deposition that his hearing "progressively got worse" after his visit to Dr. Newton in 1993, and that his wife told him "all the time" that he was having trouble hearing. With regard to plaintiff's tinnitus, defendant attached a report dated May 11, 2002, by Allan Gold, M.D., which states that plaintiff "has had constant ringing tinnitus in each ear for the past eight or ten years." It is also uncontroverted that plaintiff attributed his difficulty hearing to his exposure to noisy conditions at the railroad. Plaintiff testified that as far back as 1993, when he first visited Dr. Newton, he believed his hearing problems were related to the railroad:

> Q. At that time did you have some belief that the ringing in your ear[s] and any problems you were having were related to your work?
> A. I'm going to say yes, it just kept getting worse.

Thus, defendant has satisfied its initial summary judgment burden.

---

[3] The Second Circuit found that plaintiff failed to "proffer[] sufficient evidence to support his argument that 'tinnitus' and 'hearing loss' are separate conditions." *Mix*, 345 F.3d at 90. The Second Circuit therefore evaluated tinnitus and hearing loss, together.

In an effort to raise a question of fact as to whether his injuries prior to June 28, 1997, were temporary in nature and did not manifest as permanent until after June 28, 1997, plaintiff relies on his original evidentiary submissions, as well as several new reports regarding his tinnitus and hearing loss, including the following letters from Aaron L. Shapiro, M.D., otolarynologist:

**August 14, 2000**

I saw your client, William Mix, on July 24, 2000. He informed me that over the past 3 years he has noted a decrease in his hearing. He had no history of infections or familial hearing loss. He has worked for 27 years as a [] Railroad engineer . . . . He now complains that words sound alike and he cannot distinguish specific sounds. He has extreme difficulty in a crowded room and has difficulty hearing his wife speak to him. Hearing protection on his job has only been provided for the past 3 to 5 years.

His physical exam revealed clear ear canals and intact tympanic membranes. There is no evidence of effusion or erythema. The remainder of the physical exam was within normal limits. Audiometric testing revealed a moderate to severe sensori-neural hearing loss bilaterally. Discrimination scores were 92% in the right ear and 100% in the left ear. Utilizing the AMA formula, he has a hearing deficit of 34.4%.

It is my opinion, within a reasonable degree of medical certainty that Mr. Mix has a sensori-neural hearing loss as a result of noise exposure at [the] Railroad. The pattern of his hearing loss is completely consistent with noise-induced hearing loss. The hearing loss is symmetric, suggesting that the hearing loss is secondary to noise exposure while working as an engineer at [the] Railroad.

**September 25, 2000**

I saw your client, William Mix, for a follow-up visit on September 18, 2000. He had a repeat audiogram which revealed no change from the prior exam of July 24, 2000.

We have begun a hearing aid evaluation to help Mr. Mix with his sensori-neural hearing loss.

**November 20, 2003**

> I saw Mr. Mix for follow-up on October 22, 2003. I performed an additional audiogram which was consistent with prior audiograms, in that he has a bilateral, sensori-neural hearing loss.
>
> I have reviewed serial audiograms on Mr. Mix. Of note is the audiogram of July 14, 1997. At this time, utilizing the AMA formula, Mr. Mix had a binaural impairment of 11.5%.
>
> On March 13, 2000, he had an audiogram which revealed a binaural impairment of 64.1%. The audiogram of March 13, 2000 is the closest audiogram to his date of retirement which was December 21, 1999.
>
> Based on this finding, it is my opinion, within a reasonable degree of medical certainty, that Mr. Mix sustained significant hearing loss from noise exposure beginning in 1997 through December 21, 1999. This is a significant portion of his hearing loss.

Plaintiff argues that the "significant" increase in hearing loss between July 14, 1997, and March 13, 2000, from 11.5% to 64.1%, demonstrates that his hearing injuries were "transient" in nature and raises an issue of fact as to whether the hearing loss he suffered during the three years preceding his commencement of this action was distinct from the hearing loss he suffered prior to June 28, 1997. With regard to the "significant" improvement in plaintiff's hearing, as indicated by the July 24, 2000 audiogram which revealed a 34.4% hearing loss, plaintiff asserts in his supplemental memorandum of law, that:

> [i]t is widely recognized that a person exposed to industrial noise will have a rebound in their hearing once removed from their industrial exposure. In this case, such a rebound occurred by evidence of comparison of the March 2000 – to July 2000 audiograms. The rebound of the hearing is real evidence of the temporary nature of a significant portion of plaintiff's hearing loss.

Plaintiff, however, has not included any expert or other medical evidence regarding the "rebound" theory. Further, even crediting these reports and audiogram results, the Court finds that they do not show that any hearing problems plaintiff experienced between June 28, 1997,

and June 28, 2000, were distinct from the hearing problems he experienced prior to June 28, 1997.  At best, these reports show fluctuating hearing loss.  They do not show that plaintiff's hearing problems were ever temporary, only that his hearing problems varied in severity.

Additionally, plaintiff points out that although he underwent periodic hearing examinations throughout his employment, defendant never gave him the results until he failed one in April 2000.  Plaintiff attempts to analogize these facts to those in *Caputo v. CSX Transp., Inc.*, No. 94-4023, 1995 WL 699622 (6th Cir. Nov. 27, 1995) (unpublished table decision) as discussed in *Fonseca v. Consolidated Rail Corp.*, 246 F.3d 585, 591 (6th Cir. 2001).  In *Caputo*, the plaintiff, a lifelong railroad worker who had been exposed to loud noise for thirty years and suffered hearing loss as a result, had been told at periodic health exams that his hearing was normal.  *Fonseca*, 246 F.3d at 592.  As a result, the plaintiff was not aware of "any cumulative effects of the exposure to such noise" until sometime during the three years before he filed the lawsuit.  *Id*.  The Sixth Circuit therefore found that "a material factual dispute existed as to the date when the cumulative hearing impairment manifested itself".  *Id*.

Here, plaintiff asserts defendant never told him that any of the previous hearing examinations indicated that he had hearing loss or that he was at risk for additional hearing loss.  Plaintiff therefore argues that defendant's failure to adduce evidence demonstrating that the periodic hearing examinations revealed hearing loss, raises a question of fact as to whether his hearing was normal prior to June 28, 1997, and only manifested itself as a cumulative, permanent injury after.

As an initial matter, it is of no consequence whether defendant adduced evidence indicating that the hearing examinations plaintiff underwent throughout his employment

11

revealed hearing loss because the relevant legal standard relates to plaintiff's state of mind and when plaintiff knew or should have known of his hearing loss and its cause. It is undisputed that defendant never informed plaintiff at any time during his employment of the results of his hearing examinations. Thus, plaintiff could not be charged with such knowledge. Further, unlike the plaintiff in *Caputo* who was told that his hearing was normal, plaintiff was told nothing about the results of any hearing exam until he failed the hearing exam in April 2000. There is no evidence regarding the amount of hearing a railroad employee needed to lose before he would fail the hearing exam. Consequently, there is no basis for a fact finder to infer that because defendant did not inform plaintiff that he had failed the hearing examinations, plaintiff had reason to believe his hearing was normal.

Even viewed in the light most favorable to plaintiff, the evidence shows that plaintiff has suffered hearing loss and tinnitus, constantly, though in varying degrees, prior to June 28, 1997, the date the statute of limitations began to run. There is no evidence that plaintiff's hearing was normal, that he had reason to believe his hearing was normal, or that his hearing problems were temporary discomforts as a result of his exposure to loud noise at the railroad, prior to June 28, 1997, and that his symptoms manifested themselves as permanent injuries between June 28, 1997, and June 28, 2000. Indeed, Dr. Shapiro, who found that plaintiff "sustained significant hearing loss from noise exposure beginning in 1997 through December 21, 1999", specifically noted that this was "a significant *portion* of his hearing loss." (Emphasis added). Accordingly, because plaintiff has not "proffer[ed] evidence that, prior to June 28, 1997, his tinnitus and hearing loss caused only temporary discomfort as a result of his exposure to noisy working conditions, and that these symptoms did not manifest themselves as a cumulative, permanent

injury until the three-year period preceding the suit", *id*. at 91, defendant's motion for summary judgment regarding plaintiff's claim for injuries occurring between June 28, 1997, and June 28, 2000, is granted as barred by the statute of limitations.

## V. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that defendant's motion for summary judgment is granted in its entirety; and it is further

**ORDERED** that the complaint is dismissed.

**IT IS SO ORDERED.**

Dated: April 12, 2005
Syracuse, New York

*/s/ Norman A. Mordue*
Norman A. Mordue
U.S. District Judge